UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DURELL T. CRAIN,

    Plaintiff,

    v.      CAUSE NO. 3:23-CV-262-DRL-JEM

RON NEAL *et al.*,

    Defendants.

OPINION AND ORDER

Durell T. Crain, a prisoner without a lawyer, filed an amended complaint seeking monetary damages. ECF 56. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Crain's earlier complaint alleged that Warden Ron Neal, Joseph Schneider, Captain Tibbles, Dawn Buss, Executive Assistant Mark Newkirk, Pam James, and D.H.B. Officer Chambers discriminated against him based on his race. ECF 10. In that complaint, Mr. Crain indicated that he was housed in a protective custody unit due to an alleged plot to murder him, and he believed the defendants were conspiring to have him removed from protective custody. This belief appeared to be based on a disciplinary

complaint that was brought against him by Joseph Schneider and approved by Captain Tibbles. He also asserted that Pam Jones wouldn't permit him to view video footage relevant to the charge. Mr. Crain was found guilty, placed in a restrictive housing unit, and lost good time credits. Mr. Crain complained to Executive Assistant M. Newkirk about not receiving the video, and Mr. Newkirk told Mr. Crain he could raise his argument that he was denied evidence in an appeal. Mr. Crain raised this issue on appeal, but Warden Neal denied the appeal.

This court screened Mr. Crain's complaint (ECF 22), and he wasn't permitted to proceed on his allegations that he was wrongfully charged or found guilty of the disciplinary complaint because he lost good time credit, and he can't pursue these claims until the guilty finding is overturned. *See Edwards v. Balisok*, 520 U.S. 641 (1997) ("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."). Mr. Crain's complaint didn't permit an inference that the disciplinary charge had been overturned. This court also noted that his allegations of race discrimination and conspiracy were too vague to state a claim.

Mr. Crain also alleged that Dawn Buss and Joseph Schneider were retaliating against him by trying to have him removed from protective custody and to deprive him of the video footage he requested because he exercised his first amendment rights by filing grievances in November 2022. It was unclear why Mr. Crain believed there was a link between the November 2022 grievances and the disciplinary proceedings that

followed. Therefore, this court found that these allegations didn't state a claim. He also sought a preliminary injunction, and that request was denied because the complaint did not state a claim.

The court granted Mr. Crain an opportunity to amend his complaint *if he believed he could state a claim based on (and consistent with) the events described in his complaint.* ECF 22 at 3-4. Mr. Crain instead filed an appeal. ECF 35. When that appeal was dismissed, this court extended the deadline for Mr. Crain to amend his complaint. ECF 53; ECF 54.

Mr. Crain filed an amended complaint (ECF 56), but it doesn't appear to mention the previously asserted allegations regarding a conspiracy to have Mr. Crain removed from protective custody, and it doesn't allege that any disciplinary conviction was overturned. Mr. Crain doesn't assert that he was retaliated against. He again asserts that he has been discriminated against, but the factual basis for these allegations appears to be wholly different than those giving rise to his earlier complaint.

Here, he alleges that African Americans in the protective custody unit at Indiana State Prison aren't hired for jobs. Mr. Crain indicates that he asked Dawn Buss[1] and Joseph Schneider for a job, and he didn't receive one. ECF 56-1 at 23. On November 13, 2022, he filed a grievance directed at Dawn Buss and Joseph Schneider about not receiving a job. *Id.* That grievance noted that there were no minorities working in the unit. *Id.* J. Wallen returned it because it was an issue for classification. *Id.* at 24. Mr. Crain then filed a classification appeal to Commissioner Christina Reagle and Warden Neal

---

[1] Dawn Buss is not listed as a defendant in the amended complaint. ECF 56.

3

indicating that he wanted a job. *Id.* at 21. Executive Assistant Mark Newkirk responded, indicating this wasn't an appealable issue. *Id.* After Mr. Crain sought work, Joseph Schneider hired an offender that Mr. Crain asserts is a known racist.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor[.]" *Id*. at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Thus, Mr. Crain must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Id.* Mr. Crain alleges that Joseph Schneider hired a white inmate who is a racist for a job in his housing unit, and that no minorities work in the unit. The hiring of a single white inmate over Mr. Crain doesn't permit a plausible inference that Mr. Crain was singled out for disparate treatment by Joseph Schneider due to his race. Mr. Crain doesn't describe the job at issue, his qualifications, or the other

4

individual's qualifications, other than mentioning that the other inmate was a known racist. This is insufficient to support an equal protection claim.[2]

Mr. Crain also alleges that, in November 2022, he was threatened while in the shower by a white offender and that offender later punched him in the face from the other side of a gate. The next day, Captain Tibbles and Joseph Schneider reviewed the cameras and saw what the white offender did but decided not to write him up.[3] He believes that this individual was not written up because he is white. Mr. Crain, however, was written up for a separate incident that occurred a week earlier.[4] As a result of the write-up, Mr. Crain was sent to a restrictive housing unit, where he endured harsher conditions[5] and was afraid for his safety. Furthermore, Mr. Crain alleges that a white offender battered or threatened him.[6] Mr. Crain told Warden Neal, Executive Assistant Mark Newkirk, and D.H.B. Chambers, but the white offender wasn't placed in restrictive housing. To the extent Mr. Crain is attempting to allege an equal protection claim based on him being

---

[2] Furthermore, a prisoner does not have a liberty or property interest in a prison job, and thus deprivation of that job doesn't violate his procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000).

[3] Mr. Crain doesn't have a right to have another inmate's alleged wrongdoing investigated or prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General.").

[4] Mr. Crain doesn't indicate who decided that he should be written up.

[5] Mr. Crain complains about several different conditions, but he doesn't allege that any of the defendants named in his amended complaint are responsible for those conditions.

[6] It is unclear from the amended complaint if this is a reference to the same offender that punched him through the gate or another offender.

charged for one incident and a white inmate not being charged for a different incident, he can't proceed. Mr. Crain can't plausibly allege that he was singled out for different treatment based on his race when the incidents occurred on different days, involved different inmates, different staff, and different circumstances.[7]

Mr. Crain asked Heather Hasza to email Joseph Schneider and ask to have him moved to C block because of the "off and on altercations" Mr. Crain was having with a white offender. ECF 45 at 6. Mr. Crain was moved the next day. Later, when this white inmate was causing trouble in the housing unit where he was assigned, Joseph Schneider moved the inmate. He placed the inmate in a cell next to Mr. Crain's cell. Ms. Hasza was aware of this. This inmate later attacked Mr. Crain.

The Eighth Amendment imposes a duty on prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (internal quotation marks and citations omitted). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint

---

[7] Furthermore, Pam James allegedly refused to preserve the video of the attack that Mr. Crain reported. A party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). However, failing to preserve evidence doesn't amount to an independent constitutional violation.

that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the law equates "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercis[ing] poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). Here, Mr. Crain's allegations are vague, and he hasn't sufficiently alleged that either Joseph Schneider or Ms. Hasza had actual knowledge that this inmate posed an imminent threat of serious physical harm to Mr. Crain. Therefore, he may not proceed on this claim.

Mr. Crain alleges that Joseph Schneider said the inmate that attacked Mr. Crain would return to the unit after he served his time in segregation. But, when the same inmate stabbed a white inmate, he was immediately removed from the unit. He seems to be alleging that, when a white offender stabs an African American offender, they're

7

allowed to remain on the unit. However, when the same inmate stabs a white offender, they're removed from the unit to protect the white offender. Mr. Crain, however, doesn't indicate when the attack on the white offender occurred or who made the decision to remove the inmate after that attack. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *Id*. Therefore, these allegations are insufficient to state an equal protection claim against Joseph Schneider.

Mr. Crain filed a grievance about the offender who attacked him being removed from the unit. Mark Newkirk said it was too early. ECF 56 at 8-9. When the grievance was returned, Mr. Crain filled out a new grievance and submitted it along with the return of grievance on November 27, 2023. On December 11, 2023, after ten business days had passed, he sent a form indicating that he hadn't received a response to his grievance. On December 19, 2023, Mr. Crain asked J. Wallen for a grievance appeal. His appeal would've been due on December 26, 2023, but he never received the form and therefore couldn't complete the grievance process. Mr. Crain, however, doesn't have a constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, these allegations don't state a claim.

At some point—it's unclear when—Mr. Crain had another altercation with what he calls a racist inmate. Mr. Crain knew the inmate had just attacked someone and had just learned that the inmate who was attacked was trying to prevent the other inmate

8

from attacking Mr. Crain. So, Mr. Crain "two pieced"[8] him, and the other inmate fell to the ground. ECF 56 at 12. Both offenders received conduct violations for the incident, but Mr. Crain's conduct violation was a "B" level write up for Battery even though he was defending himself while the other offender was charged with a "C" level violation for disorderly conduct.[9] The other offender also received a "B" level write up for his earlier attack of the other offender. He believes he received a higher-level conduct violation because he's African American.[10] Mr. Crain admits that he threw the first punch and the other inmate fell to the ground. Though Mr. Crain notes that the other offender came toward him in an aggressive manner and wanted to fight, "[p]risons may discipline inmates who engage in violence even if the inmate did so to protect himself." *Keller v. Cross*, 603 F. App'x 488, 489 (7th Cir. 2015). "[I]nmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings." *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011). Mr. Crain doesn't allege that the other inmate committed a battery before he fell to the ground. Mr. Crain and the other offender engaged in different conduct, and the allegations don't plausibly suggest any sort of racial discrimination.

After Mr. Crain explained what happened, Joseph Schneider said that they should drop his charge to a "C" level violation. Mr. Crain believes that, if the charge had been

---

[8] Mr. Crain doesn't describe what he means by this phrase, but it appears to be a reference to punching twice in rapid succession.

[9] It is unclear which defendant brought these charges against Mr. Crain and the white offender.

[10] Mr. Crain points to another incident where he received an "A" level write up while a white offender received a "B" level write up, but it's unclear which incident Mr. Crain is referencing.

9

amended, he would have only been sanctioned with 15 days in restrictive housing. He was held there longer than 15 days because there were delays in screening conduct violations in a timely manner. He feels this is unjust and believes Joseph Schneider had an affirmative obligation to intervene in the process to ensure Mr. Crain didn't remain in restricted housing for longer than fifteen days. Mr. Crain doesn't indicate if he was found guilty or what sanctions were imposed, if any.

Due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")). Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See, e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (quotations, parenthesis, and citations omitted; emphasis in original); *Marion v. Columbia Correction Inst.*, 559 F.3d

10

693, 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to ninety days does not trigger due process concerns); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty). Here, it is unclear how long Mr. Crain remained in segregation, but it can't be plausibly inferred that the duration was sufficiently long to trigger due process concerns. Therefore, Mr. Crain may not proceed on his claim stemming from his time in segregation following an altercation with a white inmate.

This complaint doesn't state a claim for which relief can be granted. Mr. Crain has already had one opportunity to amend his complaint. Nevertheless, if Mr. Crain believes he can state a claim *based on (and consistent with) the events described in this amended complaint*, he may file another amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file another amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint**, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint." Mr. Crain should write a **SHORT AND PLAIN** statement *explaining what happened to him in his own words*. He should avoid needless repetition of his allegations. He needs to include dates for each incident he describes. He needs to explain what each defendant did wrong. And, he needs to use each defendant's name every time he refers to that defendant. Once Mr. Crain has properly completed and personally signed the amended complaint, he needs to send it to the court.

**Mr. Crain is CAUTIONED that he's allowed to amend the allegations in the amended complaint; he's not allowed to bring claims based on wholly different allegations.** Mr. Crain has repeatedly raised issues in motions that fall outside the scope of his complaint. Any amended complaint Mr. Crain may file *must* be about the facts alleged in his complaint. The court won't entertain claims about things that happened after Mr. Crain left Indiana State Prison. The court also won't entertain claims seeking injunctive relief, because this case is about things that happened at Indiana State Prison, and he isn't at Indiana State Prison. Should Mr. Crain file any further claims or motions that include requests for injunctive relief in this case, they may be summarily denied as moot.

For these reasons, the court:

(1) GRANTS Mr. Crain until **November 12, 2024**, to file another amended complaint; and

(2) CAUTIONS Mr. Crain that, if he doesn't respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint doesn't state a claim for which relief can be granted.

SO ORDERED.

October 18, 2024                             *s/ Damon R. Leichty*
                                             Judge, United States District Court